FILED
CLERK

9/30/2016

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
TONYA HILL,

                Plaintiff,

        -against-

DLJ MORTGAGE CAPITAL, INC.,
DOONAN, GRAVES AND LONGORIA, LLC,
and SELENE FINANCE LP,

                Defendants.
----------------------------------------------------------X
FEUERSTEIN, J.

**OPINION & ORDER**
**15-CV-3083 (SJF)(AYS)**

I.      Introduction

On May 27, 2015, plaintiff Tonya Hill ("plaintiff") commenced this action against defendants DLJ Mortgage Capital, Inc. ("DLJ"), Selene Finance LP ("Selene") and Doonan, Graves and Longoria, LLC (DG&L) (collectively, "defendants"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*; the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq.*, and its implementing regulation, Regulation X, 12 C.F.R. § 1024.37; and Section 349 of the New York General Business Law ("GBL"). Defendants now move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiff's claims in their entirety for failure to state a claim for relief. For the reasons set forth below, defendants' motions are granted to the extent set forth herein.

II.     Background

    A.     Factual Background[1]

"The debt underlying this case" is a promissory note ("the Note"), (Amended Complaint

["Compl."], ¶ 22), in the principal amount of three hundred seventy-nine thousand two hundred

dollars ($379,200.00) that plaintiff executed and delivered to Accredited Home Lenders, Inc.

("AHL") on November 22, 2005. (Declaration of Reneau J. Longoria, Esq. ["Longoria Decl."],

Ex. A; *see also* Compl., ¶ 25). As security for the Note, plaintiff and her husband, George W.

Hill (collectively, "the Hills"), executed and delivered a mortgage on the property located at 2087

Renfrew Avenue, Elmont, New York 11003 ("the Property"), to Mortgage Electronics

Registration Systems, Inc. ("MERS"), as nominee for AHL, which was recorded in the Nassau

County Clerk's Office on December 15, 2005 ("the Hill Mortgage"). (*Id.*, Ex. B).

On or about January 1, 2008, plaintiff defaulted in her obligations under the Note.

(Compl., ¶ 26). Thereafter, the Hill Mortgage was assigned from MERS, as nominee for AHL, to

Aurora Loan Services, LLC ("Aurora") by virtue of an Assignment of Mortgage dated April 15,

2008, which was recorded in the Nassau County Clerk's Office on April 28, 2008. (Longoria

Decl., Ex. C; *see also* Compl., Ex. A).

On or about April 18, 2008, Aurora, by counsel Steven J. Baum, P.C., commenced a

mortgage foreclosure action against, *inter alia*, the Hills in the Supreme Court of the State of

New York, County of Nassau ("the state court"). (Longoria Decl., Ex. F; *see also* Compl., ¶ 31).

---

[1] The factual allegations in the complaint are assumed to be true for purposes of this motion, "unless contradicted by more specific allegations or documentary evidence," *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011), and do not constitute findings of fact by the Court.

An order of reference was entered in the state court on September 3, 2008 upon the default of all defendants in the foreclosure action, including the Hills. (Longoria Decl., Ex. G). Although the order of reference indicates that it was issued upon, *inter alia*, "due proof that all Defendants [including the Hills] hav[e] been duly served and . . . the attached affidavit of mailing reflecting compliance with CPLR § 3215(g)(3)," (*id.* at 1), plaintiff alleges that she was not served with a summons and complaint in the foreclosure action. (Compl., ¶ 32). According to plaintiff, since she "did not know about Aurora's foreclosure action, she did not submit an answer to the complaint" in the state court. (*Id.*, ¶ 33).

On or about December 11, 2008, a judgment of foreclosure and sale ("the Foreclosure Judgment") was entered in the state court action, upon the default of all of the defendants therein, including the Hills, which was recorded in the Nassau County Clerk's Office on December 17, 2008. (Longoria Decl., Ex. H; *see also* Compl., ¶ 34). Pursuant to the Foreclosure Judgment, the Property is to be sold in one (1) parcel at a public auction on a Tuesday at 11:30 a.m. by and under the direction of the appointed referee.[2] (Longoria Decl., Ex. H).

On February 27, 2009, prior to the sale of the Property, plaintiff, by counsel David I. Pankin, Esq., filed a voluntary petition for relief under Chapter 13 of the United States

---

[2] The Foreclosure Judgment also provides, in pertinent part, that "[i]f the proceeds of [the foreclosure] sale be insufficient to pay the amount reported due [Aurora] with interest and costs as aforesaid, [Aurora] may recover of . . . TONYA M. HILL A/K/A TONYA HILL the whole deficiency or so much thereof as the Court may determine to be just and equitable of the mortgage debt remaining unsatisfied *after the sale of the mortgaged premises* and the application of the proceeds thereof, *provided* a motion for a deficiency judgment shall be made as prescribed by Section 1371 of the Real Property Actions and Proceeding Law within the time limited therein, and the amount thereof is determined and awarded by an order of this Court as provided for in said action[.]" (Longoria Decl., Ex. H at 5) (emphasis added). As there has been no foreclosure sale of the Property to date, no deficiency judgment has been sought or awarded against plaintiff to date.

Bankruptcy Code ("the Bankruptcy Code") in the United States Bankruptcy Court, Eastern District of New York ("the bankruptcy court"). (Longoria Decl., Ex. I). During the pendency of this bankruptcy case, the Hill Mortgage was assigned from Aurora to GMAC Mortgage, LLC ("GMAC") by an Assignment of Mortgage dated March 31, 2009, and recorded in the Nassau County Clerk's Office on April 28, 2009. (*Id.*, Ex. D; *see also* Compl., ¶ 35 and Ex. A).

By order dated August 26, 2009, the bankruptcy court, *inter alia*, granted GMAC's unopposed motion for an order modifying the automatic stay and terminated the automatic stay as to GMAC "or its successors or assigns," (Longoria Decl., Exs. I and J), "permitting it to foreclose or otherwise pursue its mortgage remedies and rights on the [Property]." (*Id.*)

In or around September 2009, GMAC "entered into a trial modification agreement with [plaintiff] . . . ," (Compl., ¶ 36; *see* Rabitz Decl., Ex. D), pursuant to which she "made numerous payments in amounts between $1,860.00 and $2,779.80 . . . ." (Compl., ¶ 37; *see* Rabitz Decl., Ex. D). Nonetheless, plaintiff "was denied a reasonable permanent modification of her home loan."[3] (Compl., ¶ 38).

By order entered December 17, 2009, the bankruptcy court granted the trustee's unopposed motion to dismiss the bankruptcy case for plaintiff's failure to make plan payments. (Longoria Decl., Ex. I). The bankruptcy case was closed on January 4, 2010. (*Id.*)

The Hill Mortgage was subsequently assigned from GMAC, by its attorney-in-fact Green Tree Servicing LLC ("Green Tree"), to U.S. Bank National Association ("U.S. Bank"), as indenture Trustee for SASCO Mortgage Loan Trust 2007-RNP1, by an Assignment of Mortgage

---

[3] Although plaintiff conclusorily alleges, "[u]pon information and belief, [that] GMAC . . . failed to apply the trial modification payments to [her] outstanding principal balance[,]" (*id.*, ¶ 39), she does not name GMAC in this action or assert any claims against it.

dated March 26, 2011, (Longoria Decl., Ex. E), and recorded in the Nassau County Clerk's Office

on May 11, 2011.  (*Id.*, Ex. L; *see also* Compl., Ex. A).

On or about August 15, 2012, the Hills moved by way of order to show cause in the state

court foreclosure action to stay the foreclosure sale of the Property scheduled for August 21,

2012, and to have the Foreclosure Judgment "vacated and voided with prejudice" on the basis

that Aurora was "not the real party in interest."  (Longoria Decl., Ex. L).  Specifically, the Hills

claimed:

> "[T]he action that is being brought by Attorney Stephen M. Valente, Esq. of
> [DG&L] and Robert P. Lynn, Jr., Esq.[,] Referee allegedly on behalf of Aurora . . .
> no longer possess assignment of mortgage or all controlling documents regarding
> th[e] [P]roperty. . . . The lawful rights have been transferred to Green Tree . . . .
> This action was originally brought by Stephan J. Baum and not the Attorney
> Stephen M. Valente.  Stephan J. Baum is under federal investigation by the New
> York State Attorney General Office for fraudulent foreclosure activity like this
> one.  The suit names Stephan J. Baum and not the new Attorney Stephen M.
> Valente.  Therefore, Stephen M. Valente and Aurora . . . have no legal claim."

(*Id.*) (emphasis omitted).

On August 20, 2012, the day before the scheduled sale of the Property, plaintiff's husband

filed a *pro se* voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the

bankruptcy court.  (Longoria Decl., Ex. M).  On October 4, 2012, Mr. Hill's bankruptcy case was

dismissed pursuant to 11 U.S.C. § 521(i)(1), (Longoria Decl., Ex. M), *i.e.*, for failure "to file all

of the information required under [11 U.S.C. § 521(a)(1)] within 45 days after the date of the

filing of the petition[.]" 11 U.S.C. § 521(i)(1).  Mr. Hill's bankruptcy case was closed on

November 16, 2012.  (Longoria Decl., Ex. M).

By order dated November 25, 2012, the state court denied the Hills's order to show cause

in its entirety and vacated "all stays," finding, *inter alia*, (1) that the Hills "failed to establish

either a reasonable excuse for their failure to file an answer [in the foreclosure action] or a meritorious defense to the action," (Declaration of R. James DeRose III ["DeRose Decl."], Ex. C at 2) (citation omitted); (2) that they "do not deny entering into the subject mortgage and the note which it secures or that they defaulted in making the required payments," (*id.*); (3) that their application was "without any basis and devoid of merit," (*id.*); and (4) that they "also failed to establish any basis for the granting of a stay or a preliminary injunction in th[at] action or to cancel or postpone the sale of the subject property . . . ." (*Id.*) (citation omitted).

Plaintiff alleges that in 2013, Selene began servicing the Hill Mortgage, (Compl., ¶¶ 40-41), and DG&L "began communicating with [her] as the debt collection attorneys for Selene and DLJ."[4] (*Id.*, ¶ 60).

On May 13, 2013, one (1) day before the scheduled foreclosure sale of the Property, (*see* Rabitz Decl., Ex. C), plaintiff's husband filed another *pro se* voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the bankruptcy court. (Longoria Decl., Ex. N). By order entered August 30, 2013, the bankruptcy court granted the trustee's motion to dismiss the case. (*Id.*) Mr. Hill's second bankruptcy case was closed on September 16, 2013. (*Id.*)

The Hill Mortgage was subsequently assigned from U.S. Bank to defendant DLJ, by an Assignment of Mortgage recorded in the Nassau County Clerk's Office on February 3, 2014. (Compl., Ex. A). Although plaintiff alleges that the Assignment of Mortgage to DLJ "does not include an assignment of [her] debt," (Compl., ¶ 44), the document itself provides that U.S. Bank

---

[4] In opposition to defendants' motions, plaintiff submits, *inter alia*, a letter from DG&L, dated April 22, 2013, indicating, in relevant part, that the foreclosure sale of the Property was scheduled for May 14, 2013. ("Declaration of Steven B. Rabitz in Support of Plaintiff['s] . . . Opposition to Defendants' Motion to Dismiss" ["Rabitz Decl."], Ex. C).

"does hereby grant, sell, assign, transfer and convey to DLJ . . . all interest . . . in and to the [Hill Mortgage] . . . , together with the note(s) and obligations therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrued under said Mortgage/Deed of Trust." (*Id.*, Ex. A). Plaintiff further alleges that Selene "refused to provide [her] with information regarding DLJ's alleged ownership of the debt[] . . . [or] the amount she allegedly owed to DLJ[,]" (*id.*, ¶¶ 45-46); and "has communicated with [her] each month by sending statements demanding payment of the debt from approximately July, 2013 through and including August 2015."[5] (*Id.*, ¶ 47). According to plaintiff, "[e]ach of the monthly statements– in particular the monthly statements sent to [her] between May 2014 and August 2015– contain false, misleading, and deceptive information[,]" (*id.*, ¶ 48), insofar as, (1) "the outstanding principal balance and amount due include unauthorized and improper interest and fees[,] . . . do not correspond with the amount of interest indicated in the . . . [N]ote[,] . . . contradicts [sic] the amounts demanded in the foreclosure action filed by Aurora[,] . . . [and] do not reflect application of the trial plan payments made by [her] to GMAC . . . ," (*id.*, ¶¶ 49-51); (2) "the amounts appearing on Selene's monthly statements contradict the amounts reflected on [her] consumer credit reports[,]" (*id.*, ¶ 52); and (3) the "monthly statements include charges for force-placed insurance." (*Id.*, ¶ 54). With respect to the latter two (2) contentions, plaintiff alleges, (1) that "[u]pon information and belief, Selene provided false information to the consumer credit reporting agencies regarding the amount of [her] debt[,]" (*id.*, ¶ 53); (2) that she "did not receive any notice from Selene or the other Defendants either requesting [her] to provide

---

[5] However, in her opposition papers, plaintiff submits copies of only the monthly mortgage statements Selene sent to her between April 16, 2014 through April 16, 2015, and on June 24, 2015 and July 16, 2015. (Rabitz Decl., Ex. B).

hazard insurance information for her home, notifying [her] that any hazard insurance policy was expiring or expired, or informing [her] that Selene intended to purchase hazard insurance at [her] expense[,]" (*id.*, ¶ 55); (3) that "[i]nstead, upon information and belief, in 2013 Selene purchased hazard insurance and charged [her] account without providing [her] with any notice, statements, or other required information[,]" (*id.*, ¶ 56; *see also id.*, ¶ 57); (4) that "[d]espite [her] attempts to obtain information regarding the force-placed insurance charges, Selene has refused to provide it[,]" (*id.*, ¶ 58); and (5) that "[u]pon information and belief, Selene charged [her] account in an amount that is not bona fide or reasonable." (*Id.*, ¶ 59).

Plaintiff also alleges that DG&L's "communications to [her] have included information regarding [her] alleged debt that conflicts with the communications received from Selene." (Compl., ¶ 61).

On January 15, 2015, plaintiff filed a *pro se* voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the bankruptcy court. (Longoria Decl., Ex. O). By order entered February 23, 2015, the bankruptcy court granted plaintiff's motion to dismiss the case. (*Id.*, Doc. No. 14) Plaintiff's second bankruptcy case was closed on March 10, 2015. (*Id.*)

Approximately three (3) weeks later, *i.e.*, on or about March 30, 2015, plaintiff's husband filed a "Consumer Notice of Dispute of Debt" in the state court foreclosure action, in which he, *inter alia*, "disputes the alleged debt Plaintiff [Aurora] claims in the [state court foreclosure action] . . . [and] request[s]/demand[s] . . . 'verification' and debt validation as defined by 15 USC 1692(g)(1)(2)(5)(b)." (Compl., Ex. B). According to plaintiff, defendants have failed to respond to the "Notice of Dispute" or to communicate to credit reporting agencies that she disputes the debt to date. (*Id.*, ¶¶ 65-66).

On April 27, 2015, one (1) day before the scheduled foreclosure sale[6], and approximately

seven (7) weeks after plaintiff's second bankruptcy case was closed, plaintiff's husband filed a

third *pro se* voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the

bankruptcy court. (Longoria Decl., Ex. P). On June 12, 2015, Mr. Hill's third bankruptcy case

was dismissed pursuant to 11 U.S.C. § 521(i)(1). (Longoria Decl., Ex. P). Mr. Hill's third

bankruptcy case was closed on July 13, 2015. (*Id.*)


B.    Procedural History

On May 27, 2015, while Mr. Hill's third bankruptcy case was still pending, plaintiff

commenced this action against defendants alleging violations of the FDCPA, RESPA and Section

349 of the New York GBL. Plaintiff alleges that since her default on the Note as of January 1,

2008, "numerous parties have attempted to collect the debt from [her]," (Compl., ¶ 27), but "no

party has ever demonstrated their lawful authority to collect the debt." (*Id.*, ¶ 28). According to

plaintiff, since "the debt has been transferred from one entity to another without regard to the law

governing debt transfers or the accuracy of account records[,] . . . each entity has made numerous

false statements in their attempt to collect a debt allegedly owed by [her] that includes

unauthorized and improper amounts." (*Id.*, ¶¶ 29-30).

Plaintiff asserts the following claims in the amended complaint: (1) that defendants

violated §§ 1692e, 1692e(2), 1692e(8), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1)-(2) of the

FDCPA by (a) "[m]aking false, misleading, and deceptive statements [i] regarding the alleged

---

[6]  In opposition to defendants' motions, plaintiff submits, *inter alia*, a Referee's Notice of
Sale, dated March 2, 2015, issued in the state court foreclosure action, indicating that the
foreclosure sale of the Property was scheduled for April 28, 2015. (Rabitz Decl., Ex. C).

amount due on the monthly mortgage statements sent by Selene on behalf of DLJ in violation of §§ 1692e, 1692e(2), [and] 1692e(10); . . . [ii] regarding the alleged creditor in communications to [her] made on behalf of DLJ and Selene in violation of §§ 1692e, 1692e(2), [and] 1692e(10); . . . [and] [iii] to credit reporting agencies and failing to report to credit reporting agencies that the debt is disputed in violation of §§ 1692e, 1692e(2), [and] 1692e(8)[,] [b] [f]ailing [i] to apply [her] trial modification payments to the outstanding principal balance and amount due and thereby demanding an unauthorized and unlawful amount in violation of §§ 1692e, 1692e(2), 1692f, [and] 1692f(1); [and] [ii] to comply with federal regulations governing force-placed insurance charges and charging unauthorized, not bona fide, and unreasonable amounts to [her] account in violation of §§ 1692e, 1692e(2), 1692f, 1692f(1), [and] 1692f(5)[,] [c] [a]pplying interest in an amount different from that provided in the promissory note to the outstanding principal balance and amount due and thereby demanding an unauthorized and unlawful amount in violation of §§ 1692e, 1692e(2), 1692f, [and] 1692f(1)[,] [and] [d] [r]efusing to state an accurate and lawful amount of the alleged debt or the name of a lawful creditor in violation of §§ 1692g, 1692g(a)(1), [and] 1692g(a)(2)[,]" (first claim for relief) (Compl., ¶ 68); (2) that "[t]he acts and omissions complained of in this action under the FDCPA amount to 'deceptive acts and practices' as defined under the New York GBL § 349 and the case law interpreting it[,] [and] [s]ome or all of the FDCPA violations alleged . . . amount to *per se* violations of the New York GBL §349[,]" (third claim for relief) (Compl., ¶¶ 83-84); and (3) that defendants did not provide her with any of the information or requests required by RESPA's Regulation X, 12 C.F.R. § 1024.37(c) and "charged [her] account for force-place [sic] insurance services that were not bona fide or reasonable[,]" in violation of 12 C.F.R. § 1024.37(h) (fourth claim for relief), (Compl., ¶¶

90-95).  Plaintiff seeks (1) actual and statutory damages, costs and attorney's fees with respect to her FDCPA claims, (Compl., ¶ 69); (2) an injunction and judgment declaring that defendants "are obligated to comply with the mandates of the FDCPA and must: (a) cease and desist all collection activities, and (b) provide a written accounting of all amounts allegedly due under the . . . [N]ote, including an explanation of how those amounts were calculated[,]" (second claim for relief), (*id.*, ¶ 75); (3) actual, treble, pecuniary and non-pecuniary damages; costs; attorney's fees and "an injunction barring [d]efendants from engaging in deceptive acts and practices, including further attempts to collect the debt in a manner other than that authorized by [her]," (Compl., ¶ 86), with respect to her state law claim, (Compl., ¶¶ 85-88); and (4) damages "in the amount of the not bona fide and unreasonable charges" her account was charged for force-placed insurance with respect to her RESPA claims.

Defendants now move to dismiss the complaint pursuant to, *inter alia*, Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief.

III.    Discussion

A.      Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  The

plausibility standard requires "more than a sheer possibility that a defendant has acted

unlawfully." *Id.*

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements

of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550

U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct.

1955). "Factual allegations must be enough to raise a right to relief above the speculative level,

on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

*Twombly*, 550 U.S. 544, 127 S. Ct. at 1959.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the

claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences

in favor of the plaintiff. *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176

(2d Cir. 2013) (quotations and citation omitted); *Grullon v. City of New Haven*, 720 F.3d 133,

139 (2d Cir. 2013). However, this tenet "is inapplicable to legal conclusions. Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "While legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations." *Id.* at 679, 129 S. Ct.

1937. "In keeping with these principles a court considering a motion to dismiss can choose to

begin by identifying pleadings that, because they are no more than conclusions, are not entitled to

the assumption of truth." *Id.*; *see also Ruston v. Town Bd. of Town of Skaneateles*, 610 F.3d 55,

59 (2d Cir. 2010).

Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond

what is needed to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-1 (2d Cir. 2010); *accord Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 729-30 (2d Cir. 2013). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

In deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 715, 190 L. Ed. 2d 441 (2014). Courts may also consider public records in deciding a motion to dismiss. *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (state court complaint); *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002) (state court decree); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) (case law and statutes). Moreover, a plaintiff's "failure to include matters of which as pleader[] [she] had notice and which [are] integral to [her] claim– and that [she] apparently most wanted to avoid– may not serve as a means of forestalling . . . [a] decision on a 12(b)(6) motion." *L-7 Designs*, 647 F.3d at 422 (quotations, alterations and citation omitted). Factual allegations are assumed to be true "unless contradicted by more specific allegations or documentary evidence . . . ." *Id.*

With the exception of the Note, which, as the purported "debt underlying plaintiff's claims," (Compl., ¶ 22), is integral to plaintiff's claims, all of the extrinsic evidence submitted by defendants on their motions to dismiss are public records of which the Court takes judicial notice.[7]  In addition, the following documents submitted by plaintiff in opposition to defendants' motions are properly considered on defendants' motion to dismiss: (1) the communications underlying plaintiff's FDCPA claims in this case, *i.e.*, the periodic mortgage statements sent to her by Selene from April 2014 through July 2015 and the April 22, 2013 letter from DG&L, and the documents relating to plaintiff's trial modification agreement with GMAC, which are integral to the amended complaint; and (2) the Referee's Notice of Sale in the state court foreclosure action, which is a public record of which the Court may take judicial notice.


B.      FDCPA Claims

The FDCPA prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection *with the collection of any debt*[,]" 15 U.S.C. § 1692e (emphasis added), or "unfair or unconscionable means *to collect or attempt to collect any debt*." *Id.* § 1692f (emphasis added).  Specifically, plaintiff alleges that defendants violated Sections 1692e and 1692f of the FDCPA by (1) making a "false representation of– (A) the character, amount or legal status of any debt[,]" 15 U.S.C. § 1692e(2); (2) [c]ommunicating . . . to any person credit information which is known or which should be known to be false, including the

---

[7]  The documents are considered only to establish their existence and the fact that they contained certain information; not for the truth of the matters asserted therein.  *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

failure to communicate that a disputed debt is disputed[,]" *id.* § 1692e(8); (3) using "false representation or deceptive means to collect or attempt to collect any debt . . . ," *id.* § 1692e(10); (4) collecting or attempting to collect amounts not "expressly authorized by the agreement creating the debt or permitted by law[,]" *id.* § 1692f(1); and (5) "[c]ausing charges to be made to any person for communications by concealment of the true purpose of the communication." *Id.* § 1692f(5).

In addition, plaintiff alleges that defendants violated Section 1692g(a) of the FDCPA which provides, in relevant part, that "[w]ithin five days after the initial communication with a consumer in connection with *the collection of any debt*, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing[]" certain information provided therein, including "(1) the amount of the debt; [and] (2) the name of the creditor to whom the debt is owed[.]" 15 U.S.C. § 1692g(a) (emphasis added). The written notice required by Section 1692g(a) is commonly known as a "validation notice."

The term "debt" is defined in the FDCPA to mean "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). It is undisputed that the Note is a "debt" withing the meaning of the FDCPA. However, a mortgage, such as the Hill Mortgage, "is a type of security interest with real property as the collateral[,]" *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir.

2012), that a lender can take if a debtor does not fulfill a payment obligation; it "is not a promise to pay a debt. . . ." Thus, the threshold issue is whether defendants' communications challenged in the amended complaint constitute an attempt to collect the debt evidenced by the Note.

The majority of courts in this Circuit that have considered this issue have held that "the enforcement of a security interest through foreclosure proceedings that do not seek monetary judgments against debtors is not debt collection for purposes of the FDCPA." *Boyd v. J.E. Robert Co.*, No. 05-cv-2455, 2013 WL 5436969, at * 9 (E.D.N.Y. Sept. 27, 2013), *aff'd on other grounds*, 765 F.3d 123 (2d Cir. 2014)[8] (citing cases); *see also Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 311, 325 (D. Conn. 2012) ("Although there is a split of authority on th[e] issue [of whether an action seeking foreclosure should be considered the enforcement of a security interest as opposed to an action to collect a debt], it appears that a majority of courts who have addressed this question have also concluded that foreclosing on a mortgage does not qualify as debt collection activity for purposes of the FDCPA.")[9] "This is so because under New York law, the holder of a note and mortgage may proceed at law to recover on the note or proceed in equity to foreclose on the mortgage, but must only elect one of these alternate remedies." *Carlin v. Davidson Fink LLP*, No. 13-cv-6062, 2015 WL 5794250, at * 4 (E.D.N.Y. Sept. 30, 2015),

---

[8] The Second Circuit declined to address the district court's conclusion that the FDCPA does not apply to enforcement of security interests against property. *Boyd*, 765 F.3d at 125 n. 3.

[9] Although the FDCPA might apply "where there is an attempt to collect money in addition to the enforcement of a security interest" in a foreclosure action, *Derisme*, 880 F. Supp. 2d at 326, since defendants cannot file a motion for a deficiency judgment against plaintiff until after the foreclosure sale of the Property pursuant to the Foreclosure Judgment and New York law, *see* N.Y. Real Prop. Acts. § 1301, they have not engaged in any conduct related to the collection of money to date. *See, e.g. Id.*

*appeal filed* (2d Cir. Oct. 2, 2015) (quotations, alteration and citation omitted); *see also* N.Y.

Real Prop. Acts. § 1301; *Wells Fargo Bank, N.A. v. Goans*, 136 A.D.3d 709, 709, 24 N.Y.S.3d

386 (N.Y. App. Div. 2016) ("Where a creditor holds both a debt instrument and a mortgage

which is given to secure the debt, the creditor may elect either to sue at law to recover on the

debt, or to sue in equity to foreclose on the mortgage.")

As defendants' predecessor elected to proceed in equity to foreclose on the Hill Mortgage,

and, in fact, obtained the Foreclosure Judgment, pursuant to which the amounts due thereunder,

including the underlying mortgage debt, will be satisfied from the proceeds of the foreclosure sale

of the Property, defendants' communications to plaintiff necessarily were sent in connection with

their continued attempts to enforce that security interest pending the foreclosure sale of the

Property. Defendants' communications were not taken in connection with the collection of the

debt evidenced by the Note and, indeed, could not have been taken in connection with the

collection of the debt evidenced by the Note until after the foreclosure sale of the Property

pursuant to both New York law, *see* N.Y. Real Prop. Acts. § 1301, and the terms of the

Foreclosure Judgment itself. (*See* Longoria Decl., Ex. H at 5, ¶ "Fifth" ["If the proceeds of such

sale be insufficient to pay the amount reported due [Aurora] with interest and costs as aforesaid,

[Aurora] may recover of . . . [plaintiff] the whole deficiency or so much thereof as the [state]

Court may determine to be just and equitable of the mortgage debt remaining unsatisfied after the

sale of the mortgaged premises and the application of the proceeds thereof, provided a motion for

a deficiency judgment shall be made as prescribed by Section 1371 of the Real Property Actions

and Proceeding Law within the time limited therein, and the amount thereof is determined and

awarded by an order of th[e] [state] Court as provided for in said action[.]"])

It is clear from the allegations in the amended complaint and the documents integral to the amended complaint, or of which this Court takes judicial notice, that plaintiff understood that the communications sent to her from defendants were taken in connection with the state court foreclosure action and Foreclosure Judgment. For example, (1) plaintiff knew that the Foreclosure Judgment had been entered against her and her husband no later than August 15, 2012, when she filed the order to show cause in state court seeking to have the Foreclosure Judgment "vacated and voided with prejudice," (Longoria Decl., Ex. L); (2) she alleges that Selene began servicing the Hill Mortgage and Note in 2013 and sent her monthly mortgage statements from approximately July 2013 through August 2015, (Compl., ¶¶ 40-44, 47), *i.e.*, after the Foreclosure Judgment has been entered in the state court; (3) she claims that one reason Selene's monthly mortgage statements are "false, misleading, and deceptive," (*id.*, ¶ 48), is that "the outstanding principal balance and amount due that appear on Selene's communications contradicts the amounts demanded in the [state court] foreclosure action filed by Aurora[,]" (*id.*, ¶ 50); and, (4) at her direction, her husband attempted to serve defendants with a "Notice of Dispute" by filing it in the state court foreclosure action. (*Id.*, ¶ 62 and Ex. B). Indeed, in her opposition to defendants' motions to dismiss, plaintiff indicates that her "alleged debt arises from a home loan promissory note secured by a mortgage that has been foreclosed in a New York State court[.]" ("Memorandum of Law in Support of Plaintiff['s] . . . Opposition to Defendants [sic] Motion to Dismiss" ["Plf. Opp."] at 1). Accordingly, plaintiff clearly understood that all communications to her from defendants were taken in connection with the prosecution of the

18

state court foreclosure action and the Foreclosure Judgment entered therein.

The Second Circuit "consistently interpret[s]" the FDCPA with the following Congressional purpose in mind: "to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016) (quoting 15 U.S.C. § 1692(e)). "While the FDCPA's purpose is to protect unsophisticated consumers from unscrupulous debt collectors, that purpose is not implicated when a debtor is instead protected by the court system and its officers." *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010) (quotations and citation omitted); *see also Derisme*, 880 F. Supp. 2d at 327 (applying the Second Circuit's rationale in *Simmons* with respect to bankruptcy proceedings to state court foreclosure proceedings). "Prosecuting a state foreclosure action is simply not the type of abusive collective practices that the FDCPA is aimed at eliminating." *Derisme*, 880 F. Supp. 2d at 328.

In addition, plaintiff cannot state a claim under the FDCPA with respect to the periodic mortgage statements Selene sent to plaintiff pursuant to federal law, *i.e.*, 12 C.F.R. § 1026.41. (*See* Rabitz Decl., Ex. B). On October 15, 2013, the Consumer Financial Protection Bureau ("CFPB") issued a bulletin to provide guidance regarding the interplay between the FDCPA and certain of the 2013 RESPA and Federal Truth in Lending Act ("TILA") Servicing Final Rules[10],

---

[10] *See* Mortgage Servicing Rules Under the Truth in Lending Act (Regulation Z), 78 Fed. Reg. 10902 (C.F.P.B. Feb. 14, 2013).

effective January 10, 2014, which addresses, *inter alia*, a mortgage servicer's "obligation with regard to certain provisions of the servicing rules requiring disclosures to and communication with borrowers who have defaulted on the payments of their mortgage loans when they have instructed the servicer to cease communicating with them."[11] Implementation Guidance for Certain Mortgage Servicing Rules, 10152013 CFPBGUIDANCE, 2013 WL 9001249 (C.F.P.B. Oct. 15, 2013).[12] The CFPB concluded, in relevant part, (1) "that the FDCPA 'cease communication' option does not generally make servicers that are debt collectors liable under the FDCPA if they comply with certain provisions of Regulation Z (. . . [including 12 C.F.R. §] 1026.41 (periodic statement))[;] . . . [and] [2] that a servicer that is considered a debt collector under the FDCPA with respect to a borrower that provides disclosures to and communicates with the borrower pursuant to [12 C.F.R. § 1026.41] . . . , notwithstanding a 'cease communication' instruction sent by the borrower, is not liable under the FDCPA." Implementation Guidance for Certain Mortgage Servicing Rules, 10152013 CFPBGUIDANCE, 2013 WL 9001249 (C.F.P.B. Oct. 15, 2013). The CFPB determined, *inter alia*, that the servicing rule provisions requiring a

---

[11] Pursuant to 15 U.S.C. § 1692c(c), with the exceptions stated therein, "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt[.]"

[12] The CFPB provided that bulletin "as an advisory opinion interpreting the FDCPA 'cease communication' requirement in relation to the 2013 Mortgage Servicing Final Rules discussed [therein], under FDCPA section 813(e), 15 U.S.C. § 1692k(e)." 10152013 CFPBGUIDANCE, 2013 WL 9001249 (C.F.P.B. Oct. 15, 2013). Section 1692k(e) provides that "[n]o provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the [CFPB], notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason." 15 U.S.C. § 1692k(e).

servicer to provide borrowers with a periodic mortgage statement for each billing cycle under 12

C.F.R. § 1026.41 "are specifically mandated by the Dodd-Frank Wall Street Reform and

Consumer Protection Act (Dodd-Frank Act) [Public Law 111-203, sec. 1420, 124 Stat. 1376

(2010)[13]], which makes no mention of their potential cessation under the FDCPA and presents a

more recent and specific statement of legislative intent regarding th[o]se disclosures than does the

FDCPA[,] . . . [and] that th[o]se notices provide useful information to consumers regardless of

their collections status."  Implementation Guidance for Certain Mortgage Servicing Rules,

10152013 CFPBGUIDANCE, 2013 WL 9001249 (C.F.P.B. Oct. 15, 2013).

If a debt collector is not liable under the FDCPA for sending communications to a

consumer in default of a mortgage loan in compliance with the TILA's implementing regulation,

Regulation Z, including periodic mortgage statements sent pursuant to 12 C.F.R. § 1026.41, even

after the consumer requested that it cease further communications with her pursuant to 15 U.S.C.

§ 1692c(c), there is no basis for imposing FDCPA liability upon it for complying with Regulation

Z absent a "cease communication" notice by the consumer.  The reasoning behind the CFPB's

advisory opinion is equally applicable even where, as here, there is no indication that a "cease

communication" notice was sent by the consumer in default on her mortgage loan, *i.e.*,  Selene

was merely sending plaintiff the periodic mortgage statements that it was required to send to her

under the TILA and its implementing regulations, specifically 12 C.F.R. § 1026.41, for

---

[13]  Section 1420 of the Dodd-Frank Act amended Section 128 of the TILA, 15 U.S.C. § 1638, to add subsection (f) requiring "[t]he creditor, assignee, or servicer with respect to any residential mortgage loan [to] transmit to the obligor, for each billing cycle, a statement setting forth [certain information provided therein] . . . ."  Public Law 111-203, sec. 1420, 124 Stat. 1376, 2155-56 (2010).

informational purposes while the amounts due under the Foreclosure Judgment remain

unsatisfied pending the sale of the Property; not in connection with an attempt to collect a debt

from plaintiff for purposes of the FDCPA.[14]  Since defendants' communications challenged in the

amended complaint were not taken in connection with an attempt to collect the debt evidenced by

the Note, the amended complaint fails to state a plausible claim for relief under the FDCPA.

Accordingly, the branches of defendants' motions seeking dismissal of plaintiff's FDCPA claims

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure are granted and plaintiff's

FDCPA claims (first and second claims for relief) are dismissed in their entirety with prejudice

---

[14]  Indeed, the purpose of the TILA's Regulation Z, including 12 C.F.R. § 1026.41, "*is to promote the informed use of consumer credit by requiring disclosures about its terms and cost*, to ensure that consumers are provided with greater and more timely information on the nature and costs of the residential real estate settlement process, and to effect certain changes in the settlement process for residential real estate that will result in more effective advance disclosure to home buyers and sellers of settlement costs." 12 C.F.R. § 1026.1(b). The periodic statement required by Regulation Z must contain: the amount due; an explanation of the amount due; a breakdown of past payments; a list of any activity that causes a credit or debit to the amount due; partial payment information; contact information that the consumer may use to obtain information about his or her account; account information; and delinquency information, including, *inter alia*, the total payment amount needed to bring the account current. 12 C.F.R. § 1026.41(d).  The regulation provides exemptions only for reverse mortgages, timeshare plans, coupon books, small servicers as defined therein, and consumers in bankruptcy under Title 11 of the United States Code, *id.*, § 1026.41(e); not for, *inter alia*, foreclosed mortgage loans which remain unsatisfied pending the sale of the collateral real estate.  Accordingly, until the amounts due under the Foreclosure Judgment were satisfied from the proceeds of the foreclosure sale, Selene was required to provide the periodic mortgage statements required by Regulation Z, particularly since, *inter alia*, the amounts due thereunder continue to accrue interest as provided therein, (Longoria Decl., Ex. H at 4, ¶ "Third"), and DLJ, as Aurora's successor, is permitted to "add to the amount due any and all advances made by [it] for inspection fees, maintenance charges, taxes, insurance premiums or other advances necessary to preserve the property," together with interest thereon, as provided therein.  (*Id.*)  Thus, pending the foreclosure sale of the Property and transfer of the Referee's Deed, the periodic mortgage statements continue to provide useful information to plaintiff regarding those amounts notwithstanding entry of the Foreclosure Judgment in the state court.

for failure to state a claim for relief.[15]


      C.     RESPA Claim

Plaintiff alleges that defendants did not provide her with any of the information or requests required by RESPA's Regulation X, 12 C.F.R. § 1024.37(c), and "charged [her] account for force-place [sic] insurance services that were not bona fide or reasonable[,]" in violation of 12 C.F.R. § 1024.37(h).  (Compl., ¶¶ 90-95).

Regulation X was issued by the CFPB to implement RESPA, 12 U.S.C. §§ 2601, *et seq. See* 12 C.F.R. § 1025.1.  RESPA defines the term "force-placed insurance" to mean "hazard insurance coverage obtained by a servicer of a federally related mortgage when the borrower has failed to maintain or renew hazard insurance on such property as required of the borrower under the terms of the mortgage."  12 U.S.C. § 2605(k)(2).  RESPA provides, *inter alia*, (1) that "[a] servicer of a federally related mortgage shall not– (A) obtain force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance; . . . or (E) fail to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of this chapter[,]" (*id.*, § 2605(k)(1)); (2) that "[a] servicer of a federally related mortgage shall not be construed as having a reasonable basis for obtaining force-placed insurance unless the requirements of this subsection have been met[,]" *id.*, § 2605(*l*), including

---

[15]  In light of this determination, it is unnecessary to consider defendants' remaining contentions seeking dismissal of plaintiff's FDCPA claims.

written notices to the borrower as provided therein, *id.*; (3) that "[a]ll charges, apart from charges subject to State regulation as the business of insurance, related to force-placed insurance imposed on the borrower by or through the servicer shall be bona fide and reasonable[,]" *id.*, § 2605(m); and (4) that "[w]hoever fails to comply with any provision of . . . [S]ection [2605] shall be liable to the borrower for each such failure in the following amounts: . . . In the case of any action by an individual, an amount equal to the sum of – (A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." *Id.*, § 2605(f)(1).

"To survive a motion to dismiss, a plaintiff bringing a Section 2605 claim must, in addition to showing defendant's failure to comply with the provisions of Section 2605, identify damages that he or she sustained as a result of defendant's alleged violation(s)." *Kapsis v. American Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 444 (E.D.N.Y. 2013); *accord Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 539 (E.D.N.Y. 2015); *Midouin v. Downey Sav. & Loan Ass'n, F.A.*, 834 F. Supp. 2d 95, 113 (E.D.N.Y. 2011); *see also Dolan v. Select Portfolio Servicing*, No. 03-cv-3285, 2016 WL 4099109, at * 5 (E.D.N.Y. Aug. 2, 2016) (holding that Section 2605 "seeks to redress actual damages caused by the failure of one private party, *i.e.*, a loan servicer, to provide specific information to another private party, *i.e.*, a borrower[,] . . . [and] the plain language of Section 2605 indicates that an allegation of actual damages is necessary to state a claim for liability.") "Specifically, to state a Section 2605 claim, a plaintiff must sufficiently allege one of two types of damages: (1) actual damages to the

borrower as a result of the failure to comply with § 2605; or (2) statutory damages in the case of a

pattern or practice of noncompliance with the requirements of § 2605." *Kapsis*, 923 F. Supp. 2d

at 444-45 (quotations and citations omitted); *see also Midouin*, 834 F. Supp. 2d at 113

("[D]ismissal of a claim under 12 U.S.C. § 2605 is appropriate where the complaint merely prays

for relief without specifying the injury plaintiff suffered." (quotations, alterations and citation

omitted)). Plaintiff does not allege "a pattern or practice of noncompliance" and does not seek

statutory damages pursuant to 12 U.S.C. § 2605(f)(1).

"A plaintiff seeking actual damages under § 2605 must allege that the damages were

proximately caused by the defendant's violation of RESPA." *Kapsis*, 923 F. Supp. 2d at 445

(quotations and citation omitted). "Thus, to survive a motion to dismiss, the complaint must

contain factual allegations suggesting that any damages plaintiff suffered were proximately

caused by defendant's violations of § 2605, and conclusory allegations to that effect will not

suffice." *Kapsis*, 923 F. Supp. 2d at 445 (quotations, alterations and citation omitted); *see also*

*Kilgore*, 89 F. Supp. 3d at 539 (finding that conclusory allegations regarding damages are

insufficient to state a claim under RESPA); *Hines v. HSBC Bank USA as Trustee for Ace Sec.*

*Corp. Home Equity Loan Trust Series 2006-OP1 Asset Back Pass Through Certificates*, No. 15-

cv-3082, 2016 WL 5716749, at * 12 (E.D.N.Y. Sept. 30, 2016)("[A] conclusory assertion that the

plaintiff merely suffered 'damages' is insufficient to state a claim under RESPA.")

With respect to the issue of force-placed insurance, the amended complaint alleges: (1)

that the periodic mortgage statements sent by Selene "include charges for force-placed

insurance," (Compl., ¶ 54); (2) that plaintiff "did not receive any notice from Selene or the other

Defendants either requesting [her] to provide hazard insurance information for her home, notifying [her] that any hazard insurance policy was expiring or expired, or informing [her] that Selene intended to purchase hazard insurance at [her] expense[,]" (*id.*, ¶ 55); (3) that "[i]nstead, upon information and belief, in 2013 Selene purchased hazard insurance and charged [her] account without providing [her] with any notice, statements, or other required information[,]" (*id.*, ¶ 56; *see also id.*, ¶ 57); (4) that "[d]espite [her] attempts to obtain information regarding the force-placed insurance charges, Selene has refused to provide it[,]" (*id.*, ¶ 58); (5) that "[u]pon information and belief, Selene charged [her] account in an amount that is not bona fide or reasonable[,]" (*id.*, ¶ 59); and (6) that she "has been damaged in the amount of the not bona fide and unreasonable charges." (*Id.*, ¶ 96). Those conclusory allegations are insufficient to state a plausible claim for relief under 12 U.S.C. § 2605. Accordingly, the branches of defendants' motions seeking dismissal of plaintiff's RESPA claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure are granted and plaintiff's RESPA claim (fourth claim for relief) is dismissed in its entirety with prejudice for failure to state a plausible claim for relief.

      D.     State Law Claim

Although the dismissal of state law claims is not required when the federal claims in an action are dismissed, *see Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 391-92, 118 S. Ct. 2047, 141 L. Ed. 2d 364 (1998), a federal court may decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c). *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 129 S. Ct. 1862, 1866-1867, 173 L. Ed. 2d 843 (2009) (holding that a district

court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117 (2d Cir. 2013) ("The exercise of supplemental jurisdiction is within the sound discretion of the district court.") The court must "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction" over any pendent state law claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, n. 7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988); *accord Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014). Generally, where all of the federal claims in an action are dismissed before trial, the balance of factors will favor declining to exercise supplemental jurisdiction over the remaining state law claims. *See Cohill*, 484 U.S. at 350 n. 7; *Kroshnyi*, 771 F.3d at 102 ("A court may decline to exercise supplemental jurisdiction[] . . . if, among other factors . . . [it] has dismissed all claims over which it has original jurisdiction." (quotations and citations omitted)); *Delaney v. Bank of America Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (quotations and citation omitted)).

In light of the dismissal of all federal claims in this action at the pleadings stage, and upon consideration of all relevant factors, *i.e.*, judicial economy, convenience, fairness and comity, I decline to exercise supplemental jurisdiction over the remaining state law claim in this action. Accordingly, plaintiff's New York GBL § 349 claim (third claim for relief) is dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Pursuant to 28 U.S.C. § 1367(d), the statute of

limitations for any state law claim timely filed in this Court is tolled for a period of **thirty (30) days after the date of this order** unless a longer tolling period is otherwise provided under state law.

IV.     CONCLUSION

For the foregoing reasons, defendants' motions are granted to the extent set forth herein; plaintiff's FDCPA and RESPA claims (first, second and fourth claims for relief) are dismissed in their entirety with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for a relief; and plaintiff's remaining state law claim (third claim for relief) is dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).  The Clerk of the Court shall enter judgment in favor of defendants and close this case.

SO ORDERED.

                                          _____/s/_____
                                          Sandra J. Feuerstein
                                          United States District Judge

Dated: September 30, 2016
        Central Islip, New York